**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DELTA CONSULTING GROUP, INC.,** ) | |
| ) | |
| **Plaintiff/Counterdefendant,** ) | |
| ) | |
| vs. ) | Case No. 06-cv-0504-MJR |
| ) | |
| **R. RANDLE CONSTRUCTION, INC., and** ) | |
| **RONALD S. RANDLE,** ) | |
| ) | |
| **Defendants/Counterclaimants.** ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Plaintiff Delta Consulting Group, Inc., ("Delta") filed a Complaint on June 23, 2007, against Defendants R. Randle Construction, Inc., and Ronald S. Randle (collectively, "Randle"). The Complaint contains four counts: action on account stated, breach of contract, quantum meruit and unjust enrichment. Under all counts, Delta seeks recovery in the amount of $81,552.16 plus interest at 9% as allowed by law and for costs.

Randle has counterclaimed against Delta for breach of contract. Randle seeks recovery in the amount of $370,000.00 plus interest at 9% as allowed by law, attorney's fees and costs.

Delta has filed a motion for summary judgment on all counts and counterclaims. For the following reasons, Delta's motion for summary judgment is granted in its entirety.

**STATEMENT OF FACTS**[1]

---

[1]The following statement of facts comes from Delta's statement of uncontroverted facts read in conjunction with Randle's response thereto and, because the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor, *see*

1

Randle undertook a construction project for Belleville East Township High School District 201 ("the Project"). Disputes arose over the Project which caused delays to Randle's work and additional uncompensated work, thus causing Randle to sustain financial damages. Randle and Delta entered into an oral agreement by which Delta was to provide construction consulting services to Randle for the claim being advanced by Randle for delayed and uncompensated work. Delta proposed to perform the services necessary for preparation and presentation of the Request for Equitable Adjustment ("REA") to the School District (exclusive of a fee for "attendance at dispute resolution procedures") for a fee of $27,840.00. Pursuant to the parties' agreement, Delta produced an REA to be submitted to the School District, in the amount of approximately $1.6 million, in an effort recover Randle's alleged damages.

Having reviewed the REA, the School District met with Delta and Randle on February 24, 2004, and requested additional information and documentation. At Randle's request, Delta revised the REA to correct the deficiencies and produced a second REA requesting approximately $1.7 million. On March 5, 2004, after Delta's resubmission, a second meeting was held, at which Landmark Contract Management, which was negotiating for the School District, offered to settle the claim for $100,000.00. Neither of Delta's REAs was rejected, but, in each instance, Landmark requested additional information and documentation. No further negotiations were held, and, in June, 2004, Randle hired a law firm to pursue his claim. Randle made his last payment to Delta on March 9, 2004. Randle submitted no additional documents or information to the School District after retaining the law firm. His claims were settled for $450,000

---

*Anderson v. Liberty Lobby, Inc*., **477 U.S. 242, 255 (1986)**, from Randle's Memorandum of Law (Doc. 67).

# ANALYSIS

## I. Standard of Review

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. **FED. R. CIV. P. 56(c).** The moving party bears the burden of establishing both the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metropolitan Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997).** In determining whether a genuine issue of material fact exists, the Court reviews the record in the light most favorable to the non-moving party and makes all reasonable inferences in the non-movant's favor. *Anderson,* **477 U.S. at 255;** *Ulichny v. Merton Community School Dist.*, **249 F.3d 686, 699 (7th Cir. 2001);** *Miranda v. Wisconsin Power & Light Company*, **91 F.3d 1011, 1014 (7th Cir. 1996).**

Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. *Oest v. IDOC*, **240 F.3d 605, 610 (7th Cir. 2001);** *Moore v. J.B. Hunt Transport, Inc.*, **221 F.3d 944, 950 (7th Cir. 2000).**

## II. An Account Stated Existed between Delta and Randle

Delta argues that it is entitled to summary judgment against Randle because Randle's failure to object within a reasonable time to Delta's statements of account, along with Randle's partial payment of the account, constituted an agreement as to the correctness of the balance due on the account, thus establishing an account stated. An account stated has been defined as "an agreement between parties who previously engaged in transactions that the account representing

3

those transactions is true and the balance stated is correct, with a promise for the payment of the balance." *Dreyer Medical Clinic, S .C. v. Corral*, **591 N.E.2d 111, 114 (Ill. App. Ct. 1992) (citing** *Toth v. Mansell*, **566 N.E.2d 730, 734 (Ill.App. 1990))**.  "It has also been defined as an agreement between two parties which constitutes a new and binding determination of the balance due on indebtedness arising out of previous transactions of a monetary character, containing a promise, express or implied, that the debtor shall pay the full amount of the agreed balance to the creditor." *Motive Parts Co. of America, Inc. v. Robinson,* **369 N.E.2d 119, 122 (Ill. App. Ct. 1977) (citing** *Canadian Ace Brewing Co. v. Swiftsure Beer Co.***, 149 N.E.2d 442, 446 (1958))**. "The meeting of the parties' minds upon the correctness of an account is usually the result of one party rendering a statement of account and the other party acquiescing thereto." *Id.* **(citing** *Pure Torpedo Corp. v. Nation,* **63 N.E.2d 600, 602 (Ill. App. Ct. 1945)**.  An account stated is established where a "statement of account is rendered by one party to another and is retained by the latter beyond a reasonable time without objection." *Allied Wire Products, Inc. v. Marketing Techniques, Inc*.**, 424 N.E.2d 1288, 1296-97 (Ill. App. Ct. 1981)**; *Pure Torpedo,* **at** *id*.  The latter party, by retaining the statement without objection, is deemed to have recognized that the statement of the account is correct. *Eastman Kodak Co. v. T-K X-Ray, Ltd.*, **1995 WL 571460, at \*4 (N.D.Ill. 1995) (citing** *Allied Wire Products***, 424 N.E.2d at 1296-97)**. "In this manner, the debtor and creditor have a meeting of the minds as to the accuracy of the account and have manifested their mutual assent to the agreement." *Id.* **(citing** *Toth***, 566 N.E.2d at 734-35)**.

Delta and Randle had engaged in previous transactions of a monetary character, containing an implied promise Randle would pay the full amount of the agreed balance to Delta. Specifically, on January 29, 2003, Delta submitted a preliminary budget for services to Randle.

Doc. 56, Exhibit 1. The estimate for the first two phases, "Familiarization and Initial Assessment" and "Detailed Analysis and Report" was 224 man hours, for a total of $27,480.00. *Id*. The third phase, "Dispute Resolution," provided that preparation and/or attendance at dispute resolution procedures would be billed at hourly rates plus out-of-pocket expenses. *Id*. Randle paid a $5,000 retainer "to get [Delta] started with this assignment." *Id*.; *see also* Doc. 56, Exhibit 10.

Randle continued to pay Delta's invoices after they exceeded the preliminary budget amount of $27,480.00. *See id*. (7 checks totaling $67,622.19).[2] Thus, the parties mutually assented to Delta's continuing services.

It is unnecessary for the Court to "deem" that Randle recognized that the statement of account was correct. Randle acknowledged his awareness of the balance due to Delta on or about September 30, 2004, when he requested that Delta confirm a balance of $89,302.16 for his auditors. Doc. 56, Exhibit 7. On November 30, 2004, Delta responded that the balance due from Randle to Delta was actually less - $81,552.16. Thus, there is no question that Randle agreed as to the accuracy of the account. Additionally, Randle had retained the statement for more than four months, given that this affirmance of the total due from Randle to Delta occurred on or about September 30, 2004, and Delta's final invoice is dated May 7, 2004. Doc. 56, Exhibit 10.

The final consideration is whether Randle retained the statement "without objection." At this point, the Court notes that Randle's argument is entirely deficient in citation to the record and to exhibits. It appears that Randle believes that it is the Court's job to sift through twelve

---

[2] Randle states that he paid Delta $62,622.19. *See* Randle Affidavit, ¶ 35. The difference in the totals may lie in the Court's including the $5,000.00 retainer fee in its calculations. The checks considered by the Court are as follows: #14987 for $5,000.00; #15348 for $7,595.94; #15617 for $7,057.50; #16011 for $9,062.50; #16099 for $16,156.25; #16617 for $17,750.00; and #17350 for $5,000.00. Doc. 56, Exhibit 10.

exhibits in search of facts pertinent to his position. Even though it is not for the Court ". . . to try to fish a gold coin from a bucket of mud[,]" *see United States of America by and through Joseph E. Garst v. Lockheed-Martin Corp.*, **530 F.3d 374, 378 (7th Cir. 2003)**, the Court examined Randle's exhibits and finds nothing therein that counters Delta's evidence that an account stated existed between Delta and Randle.

There is no question that Randle was upset or angry with Delta after the March 5, 2004, meeting with Landmark. Randle Dep. 54:15-18. Delta's REAs lost all credibility with Randle when Landmark advised him that the reports were overstated and offered $100,000.00 to settle an REA claiming in excess of 1.7 million dollars. *Id.* 60:8-16. However, three weeks later, on March 26, 2004, Randle told Landmark that he was revising the REA and expected to resubmit it for Landmark's review in about a week. Doc. 56, Exhibit 8. Additionally, subsequent to the March 5th meeting, on March 9, 2004, he paid Delta $5,000 on invoices dated July 10, 2003 and August 10, 2003. *Id.*, Exhibit 10. Randle decided not to make any more payments to Delta at some point in March or April, 2004. *Id.* 76:10-12. Randle's testimony is as follows:

> Q.  Did you ever instruct Delta to cease work on this project?
> A.  We informed them that it was rejected again. They didn't do any more work after that.
> Q.  So that would have to be, now, for this March 5, 2004, meeting. You told them, Okay, didn't work out. Was there anything else that - -
> A.  I asked them, you know, what they could do. Well, they just kept cranking the bill, you know, and I said, No, we're done; you know. *Id.* 76:13-22.

Thus, Randle terminated Delta's services at some point after the March 5, 2004 meeting with Landmark. However, having carefully reviewed Randle's deposition, affidavit and exhibits, the Court does not find any objection, either orally or in writing, by Randle to Delta's invoices for services previously rendered.

Accordingly, the Court will enter summary judgment in favor of Delta because there exists no genuine issue of material fact, and Delta is entitled to judgment as a matter of law. The communications between Delta and Randle created an account stated, thus entitling Delta to the remaining balance due and owing in the amount of Eighty One Thousand Five Hundred and Fifty Two Dollars and Sixteen Cents ($81,552.16).

## III. Randle's Counterclaim

Randle filed a counterclaim for breach of contract, asserting that Delta failed in its contractual duties to prepare and present, diligently and properly, Randle's REA and failed to exhibit the degree of care required of a claims professional in the State of Illinois. Randle seeks $370,000, a sum which represents the amount it paid for the successful reconstruction and re-presentation of its REA to the School[3], the amount of $62,622.19 previously paid to Delta and $150,000, which represents the difference between the amount actually owed to Randle by the School District and the compromised settlement amount of $450,000.

### A. Waiver

Delta argues that Randle has not provided a scintilla of evidence that would suggest a breach by Delta. However, according to Delta, even if Randle's claim had merit, Randle waived

---

[3]Although Randle did not provide a specific amount for this part of his claim, by doing the math (370,000 - 150,000 - 62,622.19), the Court arrives at a claim for $157,377.81 for preparation and presentation of the third REA by a firm other than Delta. This claim has been neither withdrawn nor amended although Randle admits that it is not true, *i. e.,* no third REA was ever prepared or presented. Randle simply attempts to convert this claim into a claim for attorney's fees. *See* Doc. 67, p. 8. Randle's counterclaim, as set forth in his response to Delta's motion for summary judgment, changes in another way as well. The difference between what Randle demanded from the School District and what he settled for changed from $150,000 to $250,000 (the difference between $700,000 and $450,000). Compare Doc. 23, Counterclaim, p. 8 with Doc. 67, Response, p. 8.

7

any right to damages by his payment to Delta of $62,622.19 in relation to Delta's construction consulting services.

Assuming, without finding, that Delta breached its contract with Randle, the Court finds that Randle waived any right to damages in paying $62,622.19 for Delta's construction consulting services.

First, the Court notes that Randle has not responded, or, at best, has responded in a conclusory fashion, to Delta's claim that he waived any right to damages for the alleged breach of contract. As set forth above, Randle may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. **Oest, 240 F.3d at 610;** *Moore,* **221 F.3d at 950**.

Under Illinois law, "waiver" is the voluntary and intentional relinquishment of a known right. **United States v. Sumner, 265 F.3d 532, 537 (7th Cir. 2001)**. "The party claiming an implied waiver has the burden of proving a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights." **Ciers v. O.L. Schmidt Barge Lines, Inc., 675 N.E.2d 210, 213 (1996) (citation omitted)**. "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention." **Heller Intern. Corp. v. Sharp, 974 F.2d 850, 862 (7th Cir. 1992) (quoting Ryder v. Bank of Hickory Hills, 585 N.E.2d 46 (1991) (additional citation omitted)**. Where the evidence regarding a party's conduct during the relevant period is undisputed, the Court may determine waiver as a matter of law. **Wald v. Chicago Shippers Assoc., 175 529 N.E.2d 1138, 1148 (1988)**.

Randle manifested his intention to waive his right to damages in paying $62,622.19

for Delta's construction consulting services by continuing to pay Delta's invoices through March 9, 2004. He continued to use and pay for Delta's services well beyond the preliminary budget of $27,840.00. He affirmed an additional balance in excess of $80,000 on or about September 30, 2004. More than three months prior to this date, Randle had determined that he no longer wished to arbitrate his claims with the School District, had engaged counsel and had indicated his intention of filing a lawsuit to resolve his claims. *See* Doc. 63, Exhibit 9, Letter dated June 4, 2004. Randle's conduct is inconsistent with any intention of seeking the return of $62,622.19 already paid to Delta. He has offered no evidence that he asked Delta to return the money or took any other action prior to the filing of his counterclaim. Indeed, his conduct manifested a continued recognition of the contract's existence after he expressed his belief that Delta's performance was deficient and that Delta had, thereby, breached its contract with him. ***See, e. g., Chicago College of Osteopathic Medicine v. George A. Fuller Co., 719 F.2d 1335, 1343 (7th Cir. 1983).***

Accordingly, the Court finds that Randle had impliedly waived his right to damages in the amount of $62,622.19 for breach of contract which he had paid to Delta for its services.

### B. Counterclaim for Reconstructing or Re-presenting Delta's Amended REA

In his counterclaim, Randle claims damages for ". . . the amount it paid for the successful reconstruction and re-presentation of its REA to the School, . . ." apparently, $157,377.81. *See* fn. 3. The allegations are as follows:

> 11. As the result of Delta's deficient performance and breaches of the parties' agreement as set forth above, Randle was forced to engage the services of another firm to entirely reconstruct its REA and re-present in to the School District.
>
> 12. Upon the preparation and presentation to the School District of the third and final REA, by Randle's representative, which thoroughly addressed the deficiencies in Delta's two REA's as identified by the School District, Randle's claims were settled for the amount of $450,000.00.

Randle does not explain why he has never amended this claim, although it is palpably, demonstrably false, as Randle and his counsel were and are aware.

Randle now explains these damages as ". . . the amount of Randle's contingent fee payment to its counsel, the payment of which would not have been necessary had Delta performed its duties pursuant to the agreement of the parties." Doc. 67, Defendant's Response, p. 8. At Randle's deposition on January 4, 2007, the following colloquy occurred:

> Q. I'm referring to the second one [¶ 11] which reads, As the result of Delta's deficient performance and breaches of the parties' agreement as set forth above, Randle was forced to engage the services of another firm to entirely reconstruct its REA and re-present it to the School District. And could you tell me who that other firm was?
>
> Mr. Pollack: I'm -- If -- I could interject, that was absolutely not true. It was presented to our law firm in order to not re-submit, but actually to file suit. That is in need of amendment.
>
> Mr. Kaupp: Okay. So -- So the REA was not re-constructed and re-submitted?
>
> Mr. Pollack:  No.

Doc. 56, Exhibit 2, Randle Deposition, 88:19-25, 89:1-9.  Because the counterclaim for reconstructing and re-presenting Delta's REA was without basis and should have been amended or withdrawn, the Court will strike the counterclaim as to this issue.

In the alternative, if Randle were to amend his counterclaim to claim damages for the amount of his contingent fee payment to counsel, this claim, too, would be unavailing. "Absent a statutory or contractual provision allowing their recovery, each party to litigation must pay its own attorney fees." ***Equipoise PM LLC v. International Truck and Engine Corp*. 2007 WL 2228621, \*15 (N.D.Ill. 2007) (citing *Vill. of Glenview v. Zwick*, 826 N.E.2d 1171, 1176 (Ill. App. Ct. 2005)**. Randle has identified neither a statute nor a contractual provision that authorizes him to collect his

attorney's fees from Delta. Randle's request for fees is, therefore, stricken because there is no cognizable basis on which it can proceed.

### C. Counterclaim for settlement damages

Randle claims damages for the difference between the amount he asserts that the School Board should have paid him and the settlement amount to which he agreed. This is stated in the counterclaim as $150,000 and in Randle's response as $250,000 (the difference between $700,000 and the settlement amount of $450,000).

Randle asserts, "Delta failed in its contractual duties to diligently and properly prepare and present Randle's REA and to exhibit that degree of care required of a claims professional in the State of Illinois." Counterclaim, ¶ 13. While again identifying the claim as "contractual," the language regarding exhibiting the requisite degree of care leads to the conclusion that this part of the claim is, in fact, a professional negligence claim. As such, Randle must establish proximate cause between Delta's negligent conduct and his damages.

"The burden is on the plaintiffs (here, counterclaimant) to 'affirmatively and positively show' that the defendant's alleged negligence caused plaintiffs' injury." *Mach Mold Inc. v. Clover Associates, Inc.*, **383 F.Supp.2d 1015, 1038 (N.D.Ill. 2005) (citation omitted)**. While a plaintiff may demonstrate proximate cause through both circumstantial and direct evidence, proximate cause may not be based on "mere surmise, guess, or conjecture as to the cause of the injury." *Bermudez v. Martinez Trucking Co.*, **796 N.E.2d 1074, 1078 (2003)**. "Rather, '[p]roximate cause can only be established when there is a reasonable certainty that the defendant's acts caused the injury.'" *Id.* **(quoting** *Salinas v. Werton*, **515 N.E.2d 142, 144 (1987)**.

In the case before this Court, Randle argues that the compromised settlement

11

damages were a result of Delta's poor work product. However, after reviewing the record in the light most favorable to Randle, this Court cannot find that this inference is reasonable. Randle's claim is entirely speculative. Randle cannot establish that Delta's work product caused him to compromise his claim against the School District for less money than he would have received absent Delta's alleged failure to perform its duties in the development and presentation of the REAs. This is particularly clear given that the settlement into which Randle entered was part of a global settlement among the District and four contractors, all of whom were represented by the same lawyer, Lynn Whitt of Pollack & Whitt, P. C. *See* Doc. 56, Exhibit 6, Byron Francis Affidavit, ¶ 12. In order to settle the four contractors' claims, Whitt demanded, and the District agreed to pay, $800,000. *Id.* ¶¶ 13, 14. Whitt and the four contractors agreed upon the division of that sum among themselves. *Id.* ¶ 13. The School District made no determination of the extent to which each contractor was entitled to a share of the $800,000.00.

Applying the standards set forth above to these facts, the Court finds that Randle has not established to a "reasonable certainty" that Delta's acts caused the alleged injury. Accordingly, the Court finds that Randle's alleged damages, whether in the amount of $150,000.00 or $250,000.00, for the difference between the amount allegedly owed to Randle by the School Board and the compromised settlement amount are entirely speculative and that Randle has failed to establish the requisite proximate causation.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Delta's motion for summary judgment (Doc. 55). The Court also **GRANTS** Delta's claim for prejudgment interest. Delta shall, on or before September 11, 2007, present its computation of prejudgment interest. Randle shall file

his objections, if any, to the computed amount on or before September 25, 2007.  The Court will then enter final judgment in this action.  Because this Order is ultimately dispositive of this action, all settings herein are **CANCELED**.

        **IT IS SO ORDERED.**

        **DATED this 23rd day of August, 2007**

        **s/Michael J. Reagan**
        **MICHAEL J. REAGAN**
        **United States District Judge**